**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

June 17, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:    *Andrea F. v. Frank Bisignano, Social Security Administration*
       Civil No. 1:25-cv-02852-JMC

Dear Counsel:

Andrea Forde ("Plaintiff") petitioned this Court on August 29, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claim for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in the case as well as the parties' dispositive filings. (ECF Nos. 9, 12, 15). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

### I.    Procedural Background

Plaintiff filed her application for DIB on October 1, 2021, alleging that she became disabled on September 13, 2021 (Tr. 160-163).[1] The SSA initially denied Plaintiff's application on April 6, 2022 and upon reconsideration on July 27, 2023. *Id.* at 64-69; 71-76. On September 26, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 93-94. On May 2, 2024, ALJ Donald Neely held a telephonic hearing. *Id.* at 14-26. On August 20, 2024, the ALJ rendered a decision denying Plaintiff's claim. *Id.* Plaintiff filed a request for review on August 27, 2024, and on July 7, 2025, the ALJ's decision became final when the Appeals Council affirmed it. *Id.* at 158-59; 1-6.

### II.    The ALJ's and Appeals Council's Decisions

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

sequential evaluation of disability set forth in the Secretary's regulations.  20 C.F.R. § 416.920.
"To summarize, the ALJ asks at step one whether the claimant has been working; at step two,
whether the claimant's medical impairments meet the regulations' severity and duration
requirements; at step three, whether the medical impairments meet or equal an impairment listed
in the regulations; at step four, whether the claimant can perform her past work given the
limitations caused by her medical impairments; and at step five, whether the claimant can perform
other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).  If the first three steps do
not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the
most' the claimant 'can still do despite' physical and mental limitations that affect her ability to
work[,]" by considering all of the claimant's medically determinable impairments regardless of
severity.  *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof
through the first four steps of the sequential evaluation.  If the claimant makes the requisite
showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other
work that exists in significant numbers in the national economy, considering the claimant's
residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d
858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged
in substantial gainful activity "since September 13, 2021, the alleged onset date."  (Tr. 19).  At
step two, the ALJ determined that Plaintiff suffered from the following severe impairments:
"diabetes mellitus, end-stage renal disease status-post renal transplant, coronary arteriosclerosis,
hypertension, obesity, lupus, and osteoarthritis of the bilateral hands." *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or
combination of impairments do not meet or equal one of the listed impairments in the regulations.
*Id.* at 20; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1525, 404.1526,
416.925, 416.926). To that end, the ALJ reasoned as follows:

> The severity of the claimant's physical impairments, when considered singly and
> in combination, does not meet or medically equal the criteria of any listed
> impairment. In making this determination, the undersigned has considered sections
> in listing 1.18, 4.12, 6.04, and 14.02, as well as any relevant Social Security
> Rulings, including SSR 19-2p and SSR 12-2p, and finds that the evidence does not
> demonstrate the criteria required under the listings. There is no evidence of a
> complete inability to use either upper extremity or for the need for use of an
> assistive device (7F & 8F). Cardiology impairment and kidney disease have been
> stable without the necessary bloodwork findings support meeting or equaling the
> listings (see 3F, 4F, & 6F). Regarding lupus, while the claimant has alleged fatigue
> and malaise, and complained of the same to providers, there is nothing in the record
> to support the severity described in the listing based on largely functional and
> independent activities of daily living and the conservative nature of treatment.
> Additionally, while the cardiovascular and renal symptoms are involved, during the
> relevant period, records support stable and asymptomatic findings (3F, 4F, & 6F).
> Although there is no specific level of body weight or BMI that equates to a "severe"
> impairment, obesity may increase the severity of coexisting or related impairments
> to the extent that the combination of impairments meets the requirement of a listing.

> Among other things, obesity can exacerbate the severity of other medically determinable impairments. In this regard, obesity may limit an individual's ability to generally sustain activity on a regular and continuing basis during a typical full-time work schedule. SSR 19-2p. In the present case, the undersigned finds that the severity of the claimant's obesity contributes to the claimant's symptoms, but not to such an extent as to support the equaling of any listing.

*Id.* Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ladders, ropes, and scaffolds, and frequently stoop, kneel, crouch, and crawl. She can frequently handle objects with the bilateral upper extremities. She can perform work where she has occasional exposure to extreme cold and extreme heat. She can perform work where she has occasional exposure to hazards such as moving machinery and unprotected heights.

*Id.* at 21. In reaching that decision, the ALJ reasoned in part,

> The claimant is a 51-year-old individual who alleges an inability to work based primarily upon severe fatigue and low energy, particularly with exertion. According to the claimant, these symptoms interfere with her ability to dress and bathe, lift heavy objects, walk long distances, and focus on tasks. She also alleges dysfunction of the bladder and the need to wear incontinence pads. She has endorsed performing light household chores such as laundry and cleaning, caring for her bedridden father, including preparing meals, managing and dispensing medications, and emptying a catheter bag (4E, 8E, & Claimant's Hearing Testimony).
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision..
> …
> In sum, the above residual functional capacity assessment is supported by the evidence of record. It is reasonable to limit the claimant to a range of light exertional work, with limitations in the claimant's ability to climb and perform postural movements. However, the nature of the claimant's treatment and the findings made during the course of treatment do not support a more restrictive finding. The claimant has not undergone any extensive treatment or physical therapy, and has not needed any surgical intervention. While the claimant is certainly limited to some degree, the record does not support any limitations beyond the assessed residual functional capacity.

3

*Id.* at 21-23.  The ALJ found that the Plaintiff was capable of performing past relevant work as an ultrasound technician.  *Id.* at 24.  Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff was able to work as (1) a Cashier II with 100,000 jobs nationally; (2) a Cleaner II, with 500,000 jobs nationally, or (3) a Mail Sorter, Nongovernmental with 75,000 jobs nationally.  *Id.* at 25.  Thus, the ALJ determined that the Plaintiff had not been under disability from the alleged onset date through the date of the ALJ's decision.  *Id.*

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards.  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance."  *Id.* (other citation and internal quotations omitted).  In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ."  *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision warrants remand for two reasons: (1) the ALJ erred at step three for failing to properly evaluate whether Plaintiff's medical impairments met or equaled Listing 14.02[2] and (2) the ALJ's RFC was improperly reached for failure to properly consider Plaintiff's fatigue.  (ECF No. 9 at 7).  For the reasons that follow, the ALJ's analysis ran afoul of Listing 14.02.  As such, I will remand the case, and it will be unnecessary to address the second argument.

Plaintiff first argues remand is proper because the ALJ relied on only one conclusory statement under Step Three concerning Plaintiff's severe lupus. (ECF No. 9 at 11).  The ALJ reasoned that he considered Listing 14.02, and "[r]egarding lupus, while the claimant has alleged fatigue and malaise, and complained of the same to providers, there is nothing in the record to support the severity described in the listing based on largely functional and independent activities of daily living and the conservative nature of treatment." (Tr. 20).  Plaintiff urges that this analysis "fails at the most basic level because it never identifies, articulates, or applies the specific criteria of Listing 14.02." (ECF No. 9 at 11).  The Commissioner argues that while brief, the explanation was clear and continued by summarizing plaintiff's medical treatment history. (ECF No. 12 at 8-9).  Relying on out of state cases that predate the case law discussed below, the Commissioner continued by arguing that the ALJ's opinion as a whole supports a finding of harmless error.  *Id.* at 10-11. Plaintiff urges that the Commissioner's brief relies on a *post hoc* reconstruction of the ALJ's analysis, emphasizing that the ALJ never stated that Plaintiff lacks severe fatigue as defined in Listing 14.00(C)(2) or otherwise analyzed how the fatigue (for which there is evidence) applied

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.02 sets out the requirements necessary for systemic lupus erythematosus to qualify as a per se disability.  *See also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00D1.

to the regulatory framework below.  (ECF No. 15 at 3).

To begin, a claimant with Systemic Lupus erythematosus ("SLE") can establish presumptive disability pursuant to Listing 14.02 under one (1) of two (2) subsections, A or B, as shown below:

A.  Involvement of two or more organs/body systems, with:

1. One of the organs/body systems involved to at least a moderate level of severity; and
2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). OR

B.  Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

§ 14.02. Moreover, SLE is "a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.00(D)(1)(a). In *Fox v. Colvin*, the Fourth Circuit held that an ALJ's step three analysis was deficient because it failed to include "any 'specific application of the pertinent legal requirements to the record evidence.'" *Fox v. Colvin*, 632 F. App'x. 750, 755 (4th Cir. 2015) (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)). There, the ALJ concluded at step three that he "considered in particular, the impairment listings."  *Id.* at 754 (cleaned up).  The district court in that case reversed the ALJ's decision because the opinion "failed to apply the requirements of the listings to the medical record."  *Id.* On appeal, the *Radford* court explained that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Id.* at 755.  (quoting *Radford*, 734 F.3d at 295 (other citations omitted); *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 260 (4th Cir.1977)).  The *Fox* court turned to the ALJ's decision at issue there and emphasized that he relied on conclusory statements and "offered nothing to reveal *why* he was making his decision." *Id.* (emphasis in original).  He "did not apply findings to the disability listing."  *Id.* Thereafter, the Court addressed the Commissioner's argument that substantial evidence existed to affirm the ALJ's findings, thus any error was harmless.  *Id.* However, the Fourth Circuit rejected that argument under *Radford* because a court "cannot begin to engage in a 'meaningful review' when there is nothing on which to base a review."  *Id.*

In *Kyle v. Commissioner, Social Security Administration*, this Court reversed and remanded a case when the ALJ's analysis did not "at any point, contain an assessment of the criteria set forth

in Listing 14.02." *Kyle v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-17-1419, 2018 WL 2013048, at \*2 (D. Md. Apr. 30, 2018). There, as here, the Commissioner argued that the ALJ's analysis was at worst, harmless error because the opinion as a whole offered substantial evidence to support the ALJ's finding and did not contain evidence sufficient to support a finding that the plaintiff's condition met or equaled Listing 14.02. *Id.* To that end, the Court recognized that the ALJ failed at any point in the opinion to analyze whether the plaintiff's SLE involved "'two or more organs/body systems' with one 'involved to at least a moderate level of severity' and '[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).'" *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.02). Although the ALJ did consider the plaintiff's fatigue and renal involvement, "the ALJ had a duty to connect the requirements of relevant listings to medical findings regarding [the plaintiff's] severe impairments." *Id.* Therefore, the Court recognized that *Fox* precluded a harmless error result and remanded the case. *See id.*

Here, after finding that Plaintiff's SLE was indeed severe at Step Two, the ALJ's Step Three reasoning is as follows:

> The severity of the claimant's physical impairments, when considered singly and in combination, does not meet or medically equal the criteria of any listed impairment. In making this determination**, the undersigned has considered sections in listing** 1.18, 4.12, 6.04, and **14.02**, as well as any relevant Social Security Rulings, including SSR 19-2p and SSR 12-2p, and finds that the evidence does not demonstrate the criteria required under the listings. There is no evidence of a complete inability to use either upper extremity or for the need for use of an assistive device (7F & 8F). Cardiology impairment and kidney disease have been stable without the necessary bloodwork findings support meeting or equaling the listings (see 3F, 4F, & 6F). **Regarding lupus, while the claimant has alleged fatigue and malaise, and complained of the same to providers, there is nothing in the record to support the severity described in the listing based on largely functional and independent activities of daily living and the conservative nature of treatment**. Additionally, while the cardiovascular and renal symptoms are involved, during the relevant period, records support stable and asymptomatic findings (3F, 4F, & 6F). Although there is no specific level of body weight or BMI that equates to a "severe" impairment, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirement of a listing. Among other things, obesity can exacerbate the severity of other medically determinable impairments. In this regard, obesity may limit an individual's ability to generally sustain activity on a regular and continuing basis during a typical fulltime work schedule. SSR 19-2p. In the present case, the undersigned finds that the severity of the claimant's obesity contributes to the claimant's symptoms, but not to such an extent as to support the equaling of any listing.

(Tr. 20) (emphasis added). Plaintiff argues that failure to connect the regulatory framework constitutes reversible error under *Radford* and points to several factual conflicts in the record. (ECF No. 9 at 12). The Court agrees with Commissioner that the statement is more than a bare recital that the ALJ considered Listing 14.02 as in *Radford*, but as in *Kyle*, the ALJ failed to

meaningfully analyze whether the plaintiff's SLE involved two or more body systems with at least a moderate level of severity and at least two of the constitutional signs such as severe fatigue, fever, malaise, or involuntary weight loss. *Kyle*, 2018 WL 2013048, at *2. Plaintiff's emphasis of the factual conflicts between multiple body systems and evidence in the record of fatigue shows the importance of applying the regulatory framework required by *Radford* and *Fox*. Indeed, notwithstanding Plaintiff's conservative treatment and daily living activities, the Court observes much evidence of fatigue and multiple body systems that required treatment. *See, e.g.*, (Tr. 351, 359, 450, 466, 391, 401, 444).

Therefore, I will reverse the case for further proceedings consistent with the standards set forth in this Opinion. This Opinion has no bearing on whether the ultimate conclusion at Step Three is correct.

## V.    Conclusion

In sum, the Court agrees with Plaintiff that the ALJ and subsequently the Appeals Council improperly considered Plaintiff's SLE at Step Three. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to an analysis at Step three, and the decision of the SSA is REMANDED for further proceedings in accordance with this Letter Order and Opinion. In so holding, the Court expresses no opinion as to the validity of the ALJ's and Appeals Council's ultimate disability determination. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge